UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORA BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 18-589 (RJL) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner, | ) |
| Social Security Administration | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
September 17, 2019 [#15, #16]

FILED
SEP 1 8 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Nora Brown ("plaintiff") brings this action against defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("defendant") pursuant to 42 U.S.C. § 405(g), seeking reversal of the denial of her application for Social Security Disability Insurance ("DIB") and Supplemental Security Income ("SSI") benefits. *See* Compl. [Dkt. #1]. This case comes before me on plaintiff's Motion for Judgment of Reversal [Dkt. #15] and defendant's Motion for Judgment of Affirmance [Dkt. #16]. For the reasons set forth below, I DENY plaintiff's motion and GRANT defendant's motion.

## BACKGROUND

**I.  Statutory Background**

Titles II and XVI of the Social Security Act provide benefits for "disabled" claimants, 42 U.S.C. §§ 423(a), 1382(a)(1), who demonstrate an inability "to engage in

1

any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months," *id.* §§ 423(d)(1)(A), 1382c(a)(3)(A). In order to qualify, the impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner of the Social Security Administration ("Commissioner") assesses disability claims through a five-step sequential evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests on the claimant in steps one through four, but shifts to the Commissioner at step five. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). At step one, the claimant must show that she is not presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must show that she has at least one "severe impairment" or combination of impairments that significantly limits her ability to perform basic work activities. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If she does, step three requires the Commissioner to determine whether the claimant's impairments "meet" or are "functionally equal" to one of the impairments listed in the relevant regulations, Appendix 1 to subpart P of 20 C.F.R. § 404 ("Listed Impairments"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do, the claimant "is deemed disabled and the inquiry is at an end." *Butler*, 353 F.3d at 997; 20 C.F.R. §§ 404.1520(d), 416.920(d).

2

If the claimant does not succeed at step three, the Commissioner assesses a claimant's "residual functional capacity" ("RFC")—that is, the Commissioner must determine the most work the claimant can still do despite her limitations. *Id.* §§ 404.1520(a)(4), 416.920(a)(4), 404.1545(a). At step four, the claimant must demonstrate that she is incapable of performing her prior work based on her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If she makes this showing, the burden shifts at step five to the Commissioner to demonstrate that, based on the claimant's RFC, she can "make an adjustment to other work" in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner concludes that the claimant can engage in "other work," then she is not disabled under the regulations. *Id.* §§ 404.1520(g), 416.920(g). Otherwise, the claimant is disabled and entitled to benefits. *Id.*

If a claimant's application for DIB or SSI is initially denied, she has the option of seeking review by an administrative law judge ("ALJ"). *See* 20 C.F.R. § 404.929. When disability claims are adjudicated before an ALJ, the ALJ is obligated to compile a comprehensive record incorporating all facts pertinent to the Commissioner's determination. *See Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989). The ALJ's opinion must show that he "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," *id.*, including evidence that was rejected, *Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986).

A claimant may appeal the ALJ's decision to the Appeals Council. 20 C.F.R. § 416.1470(a). The Council may deny the request for review, grant the request but dismiss the case, grant the request and remand the case to the ALJ, or grant the request

3

and issue a decision. 20 C.F.R. § 404.967. If the Council grants review and issues a decision, it may affirm, modify, or reverse the ALJ's decision. 20 C.F.R. § 404.979. When the Appeals Council considers a claimant's appeal and enters a decision, "it is the Appeal's Council decision which constitutes the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g)." *Schoenfeld v. Apfel*, 237 F.3d 788, 792 n.2 (7th Cir. 2001). Where the Appeals Council adopts, as modified, the opinion of the ALJ, a court "must review the decision of the ALJ as modified by the Appeals Council." *Arbogast v. Bowen*, 860 F.2d 1400, 1402–03 (7th Cir. 1988).

II. **Factual Background**

Plaintiff first applied for DIB and SSI benefits on December 17, 2013, claiming that she had been disabled since August 8, 2012. AR at 90. Her initial applications were denied in July 2014, AR at 107–10, and her request for reconsideration was denied in August 2014, AR at 114–17. She challenged the Commissioner's decision at a hearing before an ALJ in July 2016. AR at 20–46. Prior to the hearing, plaintiff submitted a memorandum requesting that the hearing record be held open for thirty days if the ALJ considered vocational testimony about other jobs in the economy under step five of the sequential evaluation process. AR at 218–19. At the hearing, plaintiff was represented by an attorney who gave an opening argument. AR at 24–25. Both plaintiff and a vocational expert testified and were examined by both plaintiff's attorney and the ALJ. AR at 26–45. After asking the vocational expert a hypothetical question and receiving a response, plaintiff's attorney stated "Okay, thank you. That's all I have, your honor." AR at 44. At the conclusion of the hearing, the following exchange took place:

4

| | |
|---|---|
| ALJ: | Counselor, do you have any further evidence to present today? |
| ATTY: | No, your honor. |
| ALJ: | Any closing? |
| ATTY: | No, your honor. |
| ALJ: | Okay. So I'm going to leave the record open for 30 days. In that timeframe, please electronically submit your [appointment of representative form] and fee agreement. |
| ATTY: | Yes. |
| ALJ: | Also track down the worker's comp [insurance medical exam] and send that in as well. |
| ATTY: | Okay. |
| . . . | |
| ALJ: | Anything further we need to be discussing today? |
| ATTY: | Don't think so, your honor, no. |
| . . . | |
| ALJ: | As I said, I'm going to leave the record open for 30 days for those additional items. |

AR at 45–46. Notably, plaintiff did not repeat her request to submit a post-hearing memorandum at the hearing itself.

After the hearing, plaintiff did not submit the requested medical exam. AR at 90. But she did file a "Post-Hearing Memorandum of Law & Objections to the Vocational Witness' Testimony." AR at 90, 220–38. In it, she objected to the vocational expert's testimony regarding job incidence in the economy because, among other things, the expert relied on outdated skill level information. AR at 220–23. Plaintiff also objected that the jobs identified by the vocational expert could not be performed within plaintiff's hypothetical RFC. AR at 223–24. Finally, plaintiff objected to any unfavorable decision being issued before she had further opportunity to address her objections at a supplemental hearing. AR at 224.

Based on the evidence received at the hearing and in the record, the ALJ concluded that plaintiff satisfied the first two steps of the five-step sequential evaluation

5

process because she was not engaged in any gainful activity and had several severe impairments: "spine disorder, diabetes mellitus type two, osteoarthritis, hearing loss, depression[,] and apnea." AR at 92–93. The ALJ found that plaintiff did not satisfy step three of the five-step process because her impairments did not meet or functionally equal the impairments listed in the relevant regulations. AR at 93. Therefore, the ALJ assessed plaintiff's residual functional capacity and found that she could "perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is capable of not more than occasionally climbing and should avoid exposure to loud noises like those in loud traffic. Further, the claimant is limited to occupations consisting of routine repetitive tasks." AR at 95–99. Based on this assessment, the ALJ concluded at step four that plaintiff was able to perform her past work as a barista. AR at 99. The ALJ therefore found that plaintiff was not disabled and was not entitled benefits. AR at 100. In her decision, the ALJ denied plaintiff's request for a supplemental hearing "in part because the instant case is resolved at step four of the sequential evaluation process." AR at 90.

In November 2016, plaintiff sought review of the ALJ's decision by the Appeals Council. AR at 239–41. The Council adopted the ALJ's findings regarding steps one through three, namely that plaintiff was without gainful employment and suffered from several impairments that, while severe, did not meet or functionally equal the impairments listed in relevant regulations. AR at 5–6. It also adopted the ALJ's finding

as to plaintiff's RFC.[1] AR at 5–6. But the Appeals Council disagreed with the ALJ's step four conclusion that plaintiff could perform her past work as a barista because that work requires exposure to loud noise, which fell outside plaintiff's RFC. AR at 5. Finding that plaintiff satisfied step four, the Council continued to step five, where it found that the Commissioner demonstrated that, based on plaintiff's RFC, she could work as a bagger or cleaner. AR at 6. The Council based this finding on the testimony of the vocational expert, who testified that both jobs fell within the plaintiff's RFC and existed in the national economy. AR at 6–7. Thus, the Council found that plaintiff was not disabled. AR at 7.

On March 19, 2018, plaintiff filed suit in this Court seeking review of the denial of her claims for DIB and SSI. *See generally* Compl. Plaintiff subsequently moved for judgment of reversal; defendant moved for affirmance.

## LEGAL STANDARD

In a Social Security disability case, a reviewing court must uphold the Commissioner's determination if it correctly applies the governing legal standards and is based on substantial evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support [a] conclusion," *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987), and demands, as a practical matter, evidence of "more than a scintilla, but less than a preponderance of the evidence," *Affum v. United States*, 566 F.3d 1150, 1163 (D.C. Cir.

---

[1] The Appeals Council faulted the ALJ for failing to address a Medical Examination Report in assessing plaintiff's RFC, but after considering that report, the Council nonetheless adopted the ALJ's RFC finding. AR at 5.

2009) (internal quotation marks omitted). A reviewing court may not substitute its own judgment for that of the Commissioner or engage in independent fact-finding. *See Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000). Bearing in mind this deferential standard, this Court's task on appeal is to carefully scrutinize the record to determine whether the Commissioner's decision is supported by substantial evidence and to ensure that the Commissioner has adequately articulated the basis for the decision. *See Simms*, 877 F.2d at 1050. Remand is appropriate if the Commissioner's reasoning is not fully articulated. *Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 111 (D.D.C. 2010).

## DISCUSSION

Plaintiff asks this Court to reverse the Appeals Council's decision and remand the case for reconsideration. The sole basis for this request is that both the ALJ and the Appeals Council "ignored altogether" her post-hearing objections to vocational testimony regarding other work she can perform, consistent with her RFC, at step five of the sequential analysis. Pl.'s Reply Mem. 1. For the reasons discussed below, I find plaintiff's arguments in favor of reversal and remand unconvincing and therefore deny her motion.

I. **The Appeals Council's Step Five Determination Was Supported by Substantial Evidence. Any Procedural Error Was Therefore Harmless.**

Plaintiff contends that the Appeals Council's failure to respond to her post-hearing objections regarding the other work the Council concluded she was capable of performing means that the Council's step five determination was not supported by substantial evidence. But I need not remand the case if an alleged procedural error is

harmless. In this context, "[a]n error is harmless 'when it is clear from the record that the [Commissioner's] error was inconsequential to the ultimate nondisability determination.'" *Davis v. Berryhill*, 272 F. Supp. 3d 154, 180 (D.D.C. 2017) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). Here, any error in failing to address plaintiff's objections was harmless because those objections were meritless.

Plaintiff raised a number of objections in her post-hearing memorandum. Nearly all of them focused on the vocational expert's reliance on the Dictionary of Occupational Titles ("DOT") for information about jobs, their requirements, and their prevalence. *See* AR at 220–24. In brief, plaintiff contended that the DOT was no longer updated by the Department of Labor, was outdated, and could not, therefore, provide valid information about the requirements or prevalence of jobs in the modern economy. *See id.* Before this Court, plaintiff reiterates her objection regarding the skill level required to perform the alternative jobs identified by the vocational expert. *See* Pl.'s Mem. at 11 & n.9. In the post-hearing memorandum, she objected that "the jobs offer[ed] at [the] hearing are no longer performed at an unskilled level pursuant to current labor market data." AR at 222. She further explained that by cross-referencing the DOT codes for alternative jobs identified by the vocational expert with the Department of Labor's modern, updated compendium of jobs—the Occupational Information Network, or "O*NET"—it became clear that the equivalent jobs identified in O*NET were no longer performed at the same skill level they once were in the DOT. *See id.* Before this Court, plaintiff points out that the alternative employment identified by the Appeals Council—bagger (DOT code 920.687-014) and industrial cleaner (DOT code 381.687-018)—are now semiskilled to

9

skilled jobs. *See* Pl.'s Mem. at 14.

But plaintiff's arguments about the vocational expert's testimony and the Appeals Council's reliance on it are flawed. Plaintiff insists that the job numbers cited by the vocational expert must have come from the Department of Labor's O*NET service. *See* AR at 222 ("The Department of Labor compiles job incidence data through SOC/OES Codes which are defined in O*NET."). Because O*NET has been updated and because there are far fewer job codes—called SOC Codes—in O*NET than there were in the DOT, plaintiff explained in her post-hearing memorandum that "the job numbers reported" by the Department of Labor "are for jobs as they are performed in the current world of work and have no correlation to how the jobs are defined in the DOT." *Id.* Plaintiff is partially correct—SOC codes did form part of the vocational expert's testimony, as she herself acknowledged. *See* AR at 40. But that is not the whole story. At the hearing, the vocational expert explained that she did not acquire her jobs data directly from O*NET but rather from a private data source called SkillTRAN, generally relied on by those in her field, which uses data sourced from the Bureau of Labor Statistics ("BLS"). *See* AR at 39–40. It is true that this underlying BLS data is itself reported according to O*NET SOC code, but SkillTRAN does the work of breaking this down further by DOT code.[2] *See id.* Thus, the number of jobs reported by the vocational

---

[2] The vocational expert's testimony, read together, stands for this proposition:
"SkillTRAN ... [i]s a program that takes in – assesses the labor market using DOT codes. ... It's a package – like a computer program. ... [T]he numbers of jobs come from .... [the] Bureau of Labor Statistics ... in groupings of SOC codes. ... That is one general area. Say the position of

10

examiner came from SkillTRAN's extrapolation of the number of jobs available for the identified DOT code and not from the broader SOC Code.

Given this context, plaintiff's argument that the job numbers reported by the vocational examiner refer to "modern" jobs that are no longer performed at the plaintiff's skill level fails. Plaintiff contends that the unskilled jobs identified by the Appeals Council based on the vocational expert's testimony—bagger (DOT Code 920.687-014) and industrial cleaner (DOT Code 381.687-018)—are actually now the jobs of hand packer and packager (SOC Code 53-7064.00) and janitor and cleaner (SOC Code 37-2011.00), both of which are performed at the semiskilled to skilled level and therefore fall outside the plaintiff's RFC. But because the vocational expert reported numbers based on DOT code and the Appeals Council's findings refer to the DOT Code, the skill level of jobs based on SOC Code is irrelevant.

Thus, the vocational expert reported and the Appeals Council relied on current job numbers for the unskilled jobs bagger and cleaner, which it concluded were within plaintiff's RFC. Unfortunately for the plaintiff, it is not appropriate for this Court to go beyond the record before me and overturn the Appeals Council's reliance on job numbers related to modern, skilled jobs when every indication in the record is that the Council never did so. I therefore conclude that the Council's step five determination was supported by substantial evidence. *Accord Dennison v. Berryhill*, No. 17-CV-1059F, 2019 WL 2088506, at *9 (W.D.N.Y. May 13, 2019) (considering and rejecting nearly

---

cashiers. But yet multiple DOT codes could fall within that. It could be all different type[s] of cashiers that could fall within that."
AR at 39–40.

identical arguments about a vocational expert's use of SkillTRAN and DOT rather than O*NET).

## II. The Post-Hearing Objections Were Not Procedurally Proper.

What's more, plaintiff's objections were not procedurally proper and therefore would not require remand for failure to provide an explanation for rejecting them even if they had merit. Plaintiff contends that the ALJ and Appeals Council both failed to address her post-hearing objections to the vocational expert's testimony. The ALJ declined to do so, the plaintiff insists, because she concluded that plaintiff was not disabled at step four of the sequential analysis and therefore did not need to address plaintiff's objections related to step five. For its part, the Appeals Council simply failed to mention plaintiff's objections. But the ALJ and Appeals Council need only respond to plaintiff's objections if they were properly made, and they were not.

First, the post-hearing memorandum in which plaintiff raised her objections was not properly submitted and so need not have been considered by the ALJ. Plaintiff insists that the record remained open for 30 days after the hearing "to submit [this objections] memorandum," but this assertion is contradicted by the very transcript plaintiff cites. Pl.'s Mem. 10. As I set out above, the ALJ left the hearing record open only for the "additional items" she had specifically requested—an appointment of representative form, a fee agreement, and an insurance medical exam.[3] AR at 45–46. As the record was

---

[3] It is hardly surprising that the ALJ did not leave the record open for a post-hearing memorandum. Plaintiff's only request to file such a document came as part of the pre-trial memorandum she sent to the ALJ. This request was never repeated at the hearing itself.

12

no longer open, the ALJ need not have considered plaintiff's post-hearing objections. Plaintiff contends that the Agency's own Hearings, Appeals and Litigation Law Manual ("HALLEX") requires the ALJ to respond to all objections a plaintiff raises to a vocational expert's testimony. *See* Pl.'s Mem. 8 n.4 (citing HALLEX § I-2-6-74(B)). But the provision plaintiff cites relates to the "Conduct of the Hearing" and requires ALJs to respond to objections raised at the hearing itself. *See* HALLEX § I-2-6-74(B). It does not cover a situation like the present one where plaintiff raised no objection at the hearing and then filed a post-hearing brief without permission. *See* AR at 44 (stating, after asking the vocational examiner a question, "That's all I have, your honor."); AR at 46 (saying, after conclusion of vocational expert's testimony and in response to ALJ's question whether there was anything further to discuss "Don't think so, your honor, no").

Second, the ALJ did, in fact, consider and reject plaintiff's request for a supplemental hearing. As I explained above, the ALJ denied plaintiff's request for a supplemental hearing "*in part* because the instant case is resolved at step four of the sequential evaluation process." AR at 90 (emphasis added). Plaintiff contends that because the Appeals Council ultimately overturned the ALJ's step four decision, the denial of a request for a supplemental hearing on evidence related to step five became improper. But the ALJ denied the hearing only "in part" because of her step four determination, meaning that after considering plaintiff's request, she had another reason or reasons for denying that request in addition to the step four determination. True, the ALJ did not set out any further reasoning in her decision, but "[a]n ALJ does not have to state on the record every reason justifying a decision. . . . 'An ALJ's failure to cite

13

specific evidence does not indicate that such evidence was not considered.'" *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).

Third, regardless of any alleged errors made by the ALJ, the step five determination plaintiff challenges was actually made by the Appeals Council, so it is the Appeals Council's decision that I must review. *See Arbogast*, 860 F.2d at 1402–03. But plaintiff did not raise her objections to the vocational expert's job numbers in her brief to the Appeals Council, so the Appeals Council did not err in failing to rule on those objections. To be sure, in her brief, plaintiff lodged a procedural challenge against the ALJ's failure to specifically address the objections raised in her post-hearing memorandum. *See* AR at 240 ("The ALJ erred by failing to address the claimant's post-hearing memorandum and objections raised therein. . . . The ALJ's failure to rule on objections . . . is harmful because the ALJ failed to follow the Agency's own policy and procedural guidelines . . . ."). But she did not raise the substantive arguments themselves to the Appeals Council. As I explained above, it was not error for the ALJ to ignore plaintiff's post-hearing objections, so neither was it error for the Appeals Council to conclude that the ALJ did not err in failing to address them. And since the Appeals Council was not presented with substantive objections to the vocational expert's testimony, it did not (and could not) err in failing to address them.

## CONCLUSION

For the foregoing reasons, the Court finds that this case must be remanded to the ALJ. A separate Order consistent with this decision accompanies this Memorandum Opinion.

                                            */s/ Richard J. Leon*
                                        RICHARD J. LEON
                                        United States District Judge